**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AEGIS MORTGAGE CORPORATION, | ) | |
| et al. | ) | Case No.: 07-11119-BLS |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| EQUITY TITLE OF NEVADA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv.Proc.No. 07-51714(BLS) |
| | ) | |
| AEGIS WHOLESALE CORPORATION, | ) | |
| WELLS FARGO HOME MORTGAGE | ) | |
| INC., COMMUNITY ONE FEDERAL | ) | |
| CREDIT UNION, BERNARD RUBIN, | ) | |
| GLORIA RUBIN, JOSEPH REYES, and | ) | |
| EVELYN REYES, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**[1]

Before the Court are two separate motions to dismiss filed by defendants Wells Fargo Bank, N.A. and Joseph and Evelyn Reyes, respectively.  For the reasons set forth below, the motions to dismiss are granted in part and denied in part.

**I. BACKGROUND**

Equity Title of Nevada ("Plaintiff") is a business entity organized under the laws of Nevada.  Complaint, ¶ 1.  As part of its business, the Plaintiff functions as a settlement agent for real estate transactions occurring in Nevada.  Complaint, ¶ 1.  On July 31st, 2007, the Plaintiff acted as a settlement agent for a real estate transaction ("Real Estate Transaction") between

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

sellers, Bernard and Gloria Rubin (collectively, "the Rubins"), and buyers, Joseph and Evelyn Reyes (collectively, "the Reyeses"). <u>Complaint, ¶¶ 6 and 8</u>. The subject of the Real Estate Transaction was property located at 4037 Cape Sand Drive, Las Vegas, Nevada ("Property"). <u>Complaint, ¶ 8</u>.

At the time of the Real Estate Transaction, Wells Fargo Home Mortgage, Inc. and Community One Federal Credit Union maintained secured loans on the property for $58,481.16 and $94,287.73, respectively. <u>Complaint, ¶ 8.</u> In order to acquire the Property, the Reyeses used Aegis Mortgage Corporation ("Debtor") as a lender, and the Debtor established a loan ("Loan") in the amount of $199,000 to fund the Reyeses' acquisition of the Property. <u>Complaint, ¶ 9</u>.

The Plaintiff acted as the escrow agent for the Real Estate Transaction and, in that role, the Plaintiff received a funding check from the Debtor for $199,954.87. <u>Complaint, ¶ 9</u>. A promissory note was executed and the Debtor was named as the payee on it. <u>Complaint, ¶ 10</u>. A deed of trust was executed and recorded and the Debtor was named as the beneficiary. <u>Complaint, ¶ 10</u>. On August 1st, 2007, the Plaintiff deposited the funding check into its trust account. <u>Complaint, ¶ 11</u>. Before the check cleared, however, the Plaintiff distributed to Wells Fargo Home Mortgage, Inc. and Community One Federal Credit Union the amounts due under their respective secured loans. <u>Complaint, ¶ 11</u>. In addition, the Plaintiff distributed $20,681.58 to the Rubins and paid certain closing costs associated with the sale of the

property.  Complaint, ¶ 11.  The funding check never cleared, however, and was returned to the Plaintiff for insufficient funds.  Complaint, ¶ 13.  The Plaintiff was unaware that the Debtor ceased all mortgage activity and closed its business on August 3rd, 2007 and, on August 7th, 2007, terminated its employees.  Complaint, ¶ 12.  On August 13th, 2007, the Debtor and certain of its affiliates filed voluntary petitions for relief under chapter 11.  Complaint, ¶ 3.

The Plaintiff states that on multiple occasions it requested that the Debtor fund the Loan or acknowledge that it does not own the Loan due to its failure to provide funding.  Complaint, ¶ 15.  According to the Plaintiff, the Debtor believes the Loan is property of its bankruptcy estate.  Complaint, ¶ 17.  Moreover, the Plaintiff believes that the Debtor will seek to sell the Loan.  Complaint, ¶ 18.  The Plaintiff further alleges that Wells Fargo Home Mortgage, Inc. and Community One Federal Credit Union have not returned the amounts paid to them, despite their knowledge that the Loan was not funded by the Debtor.  Complaint, ¶ 16.

### a. The Parties' Positions

The Plaintiff's Complaint for Declaratory Relief ("Complaint") contains five counts.  In Count I, the Plaintiff requests that this Court enter a judgment declaring, "(i) the Loan and all proceeds related thereto are not property of the Debtor's estate, and (ii) the Loan and Real Estate Transaction

3

are invalid in that the Debtor failed to provide consideration for the Loan." Complaint, p. 8.

Count II of the Complaint contains two related requests for relief. Complaint, p. 8. First, Count II requests that the Court "[e]stablish a constructive trust in favor of the Plaintiff in the amount of any proceeds received by the Debtor with respect to the Loan, including any sale thereof, and for the purpose of holding the Deed of Trust in favor of the Plaintiff[.]" Complaint, p. 8. Second, Count II requests that the Court order the "Debtor [to] pay to the Plaintiff all funds deposited into the constructive trust as the equitable owner of the Loan and any proceeds thereof, [and o]rder that the Plaintiff is the equitable beneficiary of the Deed of Trust." Complaint, p. 8.

Counts III and IV are pled in the alternative to Counts I and II and seek an order rescinding the Real Estate Transaction. Complaint, p. 8.

Count V is pled in the alternative to Counts I through IV and seeks an order "that the Deed of Trust and the Promissory Note be reformed to substitute the Plaintiff as beneficiary and payee."[2] Complaint, p. 8.

The Wells Fargo Bank, N.A. ("Wells Fargo") and the Reyeses (collectively "Defendants") argue in their respective motions to dismiss (collectively "Motions to Dismiss") that the Court should dismiss each count in the Plaintiff's Complaint. With respect to Count I, the Defendants argue that the Court lacks subject matter

---

[2] The Plaintiff also seeks attorneys' fees. Complaint, p. 8.

jurisdiction to enter the declaratory judgment sought by the Plaintiff.[3]  The Defendants argue that the Court should dismiss Counts III and IV because the Plaintiff lacks the appropriate standing to rescind the Real Estate Transaction.  Finally, the Defendants argue that the Court should dismiss Counts II and V because the Defendants are not named in either count.

The Plaintiff opposes the Motions to Dismiss.  The Plaintiff first argues that the Court has jurisdiction over its request for declaratory judgment because the Court has the power to invalidate the entire Real Estate Transaction and Wells Fargo and the Reyeses would be implicated by such an order.  Secondly, the Plaintiff believes it has standing to rescind the Real Estate Transaction because the equities of the situation demand it. Finally, the Plaintiff acknowledges that Counts II and V name neither of the Defendants.  Therefore, the Plaintiff requests that the Court not take any action with respect to the Defendants and Counts II and V.

The matter has been fully briefed and argued and is ripe for decision.

## II.  DISCUSSION

### a. Bankruptcy Court Jurisdiction

The basic statutory grant of bankruptcy court subject-matter jurisdiction is contained in 28 U.S.C. § 1334.  Section 1334 provides the district court with "original and exclusive

---

[3] The Reyeses also argue 28 U.S.C. § 1334(c) requires this Court to abstain from hearing this proceeding.  Reyeses Opening Brief at 10 [Docket No. 23].

jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). The district court has original but not exclusive jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Therefore, bankruptcy court jurisdiction fundamentally extends to four types of title 11 matters: "(1) cases under title 11, (2) proceeding[s] arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11." Binder v. Price Waterhouse & Co., LLP, (In re Resorts Int'l., Inc.), 372 F.3d 154, 162 (3d Cir. 2004) (internal citations omitted).

"Related to" jurisdiction is the most expansive of the four types of bankruptcy court jurisdiction. The Third Circuit set forth in Pacor the seminal test for "related to" bankruptcy court jurisdiction. Id. at 164. Under Pacor for a proceeding to be "related to":

> [It] need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate. The Supreme Court has explained that the critical component of the Pacor test is that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor."

Id. (internal citations omitted).

"Bankruptcy 'arising under' jurisdiction is analogous to 28 U.S.C. § 1331, which provides for original jurisdiction in district courts 'of all civil actions arising under the Constitution, laws, or treaties of the United States.'" Stoe v.

6

<u>Flaherty</u>, 436 F.3d 209, 216 (3d Cir. 2006). Thus, "'arising under title 11' includes causes of action expressly authorized by the Bankruptcy Code, e.g., proceedings to recover a fraudulent transfer or an unauthorized post-petition transfer, or an action to avoid a preference." <u>Sklar v. Munyon (In re Family Theatre, LLC)</u>, 2006 WL 3327317, *3 (Bankr. D. N.J. Nov. 14, 2006).

Alternatively, "arising in" jurisdiction provides a bankruptcy court with jurisdiction over proceedings which "have no existence outside of the bankruptcy." <u>Stoe</u>, 436 F.3d at 216 (*quoting* <u>United States Trustee v. Gryphon at the Stone Mansion, Inc.</u>, 166 F.3d 552, 556 (3d Cir. 1999)). "Arising in" proceedings are not based on a right created by the Bankruptcy Code; they are proceedings that can exist only in the context of bankruptcy. This category is illustrated by such things as "allowance and disallowance of claims, orders in respect to obtaining credit, determining the dischargeability of debts, discharges, confirmation of plans, orders permitting the assumption or rejection of contracts… ." <u>Id</u>. at 218 (internal citations omitted).

"Under title 11" jurisdiction is the most limited form of jurisdiction. "Under title 11" jurisdiction merely refers to the bankruptcy petition itself. <u>Id</u>. at 216. Jurisdiction "under title 11" provides no jurisdiction for "actions going beyond the bankruptcy petition." <u>Kovalchick v. Dolbin (In re Kovalchick)</u>, 371 B.R. 54, 59 (Bankr. M.D. Pa. 2006).

The four types of bankruptcy court jurisdiction are further divided into "core" and "non-core" proceedings.  "Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as 'core' proceedings; whereas proceedings 'related to' a case under title 11 are referred to as 'non-core' proceedings."[4]  In re Combustion Eng'g., Inc., 391 F.3d 190, 225 (3d Cir. 2004).  In core proceedings, the Bankruptcy Court assumes the role of a court of first instance with comprehensive power to hear, decide and enter final orders and judgments.  Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999).  If a matter is non-core, the Bankruptcy Court is permitted only to hear the dispute and submit a "proposed findings of facts and conclusions of law to the district court."  Id.

The Defendants argue that the Court lacks subject matter jurisdiction over Count I of the Complaint.  In Count I, the Plaintiff requests that this Court enter a judgment declaring that "(i) the Loan and all proceeds related thereto are not property of the Debtor's estate, and (ii) the Loan and Real Estate Transaction are invalid in that the Debtor failed to provide consideration for the Loan."  Complaint, p. 8.  The Court must therefore determine where Count I lies on the bankruptcy court's jurisdictional scheme.

---

[4] If a matter before a Bankruptcy Court fails to meet any of the four categories, the proceeding is consider "not related to."  In that situation, the proceeding is neither "core" nor "non-core," and the bankruptcy court has no jurisdiction over the matter. Celotex Corp. v. AIU Ins. Co. (In re Celotex Corp.), 152 B.R. 667, 671 (Bankr. M.D. Fla. 1993).

Matters requiring a bankruptcy court to determine whether certain property is property of a debtor's estate are core proceedings. Pension Benefit Guaranty Corp. v. Continental Airlines, Inc. (In re Continental Airlines), 138 B.R. 442, 445 (D. Del. 1992) ("The determination of the property of the estate is one of the core proceedings arising under title 11."). Both requests for declaratory relief in Count I require the Court to make such a determination. The first request for declaratory relief clearly requires the Court to determine whether the Loan is property of the estate. Therefore, the Court has jurisdiction over this portion of Count I.[5] The second request for declaratory judgment in Count I also requires this court to determine whether the Loan is property of the Debtor's estate. Specifically, if the Loan and Real Estate Transaction were invalidated, the Debtor would be placed in the position it occupied before the Transaction occurred; i.e., before the Loan existed. Accordingly, the Court has core jurisdiction over Count I in its entirety.

The Reyeses also argue that 28 U.S.C. § 1334(c) requires this Court to abstain from hearing this proceeding. Reyeses Opening Brief at 10 [Docket No. 23]. Section 1334(c)(2) requires

---

[5] Property held by a debtor subject to a constructive trust is not property of the debtor's estate. See 11 U.S.C. § 541(d) and Official Comm. of Unsecured Creditors of the Columbia Gas Transmission Corp. v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.), 997 F.2d 1039, 1059 (3d Cir. 1993). Count II of the Complaint requests that this Court place a constructive trust over any amounts received by the Debtor from the Loan, including the sale of the Loan. Complaint, p. 8. This question, however, is not presently before the Court. Therefore, the entirety of Count I is a core proceeding.

a bankruptcy court to abstain from hearing a proceeding based on a state law claim or state law cause of action which is related to a case under title 11. 28 U.S.C. § 1334(c)(2). The Court is not required to abstain from hearing this proceeding because, as discussed above, the Court finds that this proceeding is a core proceeding. Furthermore, the existence of an action in state court is an additional requirement for mandatory abstention under § 1334(c)(2). The Reyeses have not alleged that a state court action exists. Accordingly, the Motions to Dismiss are denied to the extent they seek to dismiss Count I of the Complaint.

### b. Plaintiff's Standing to Bring Claims for Rescission

As an alternative to the Claims put forward in Counts I and II, the Plaintiff asks the Court to rescind the Real Estate Transaction. Complaint, ¶¶ 31-41. The Plaintiff presents two legal theories upon which the Court may rescind the Real Estate Transaction: mutual mistake of fact and negligent misrepresentation. Complaint, ¶¶ 31-41.

Under Nevada law[6], mutual mistake is grounds for equitable rescission of a contract. Gramanz v. Gramanz, 930 P.2d 753, 758 (Nev. 1997) (quoting Tarrant v. Monson, 619 P.2d 1210, 1211 (Nev. 1980)). Nevada courts have not yet addressed whether negligent misrepresentation is grounds for rescission. Safeco Ins. Co. of Am. v. Young, 1990 WL 15468, *6 (9th Cir. Feb. 20, 1990). However, the Ninth Circuit in Safeco addressed the issue, applied the law as it believed the Nevada Supreme Court would, and found

---

[6] Nevada law controls the Real Estate Transaction.

that a party pleading negligent misrepresentation may seek
rescission.  Id. at *6-7.  Therefore, as a threshold matter,
rescission is a remedy available to the Plaintiff.  However, the
Plaintiff must also establish that it has standing to rescind the
Real Estate Transaction.

According to the Restatement of Contracts, the following
are the elements of the claim for rescission based on mutual
mistake of fact:

> Where a mistake of both parties at the time a contract was
> made as to a basic assumption on which the contract was
> made has a material effect on the agreed exchange of
> performances, the contract is voidable by the adversely
> affected party unless he bears the risk of the mistake[.]

Restatement (Second) of Contracts § 152 (1981).  Furthermore, in
order to prove a claim for negligent misrepresentation, a
plaintiff must show the following:

> If a party's manifestation of assent is induced by either a
> fraudulent or a material misrepresentation by the other
> party upon which the recipient is justified in relying, the
> contract is voidable by the recipient.
>
> If a party's manifestation of assent is induced by either a
> fraudulent or a material misrepresentation by one who is
> not a party to the transaction upon which the recipient is
> justified in relying, the contract is voidable by the
> recipient, unless the other party to the transaction in
> good faith and without reason to know of the
> misrepresentation either gives value or relies materially
> on the transaction.

Id. at § 164.  A common element to both mutual mistake and
negligent misrepresentation is that the plaintiff must be party
to the contract in order to bring the claim.

The Real Estate Transaction was a transaction between the
Rubins as sellers and the Reyeses as buyers.  Complaint, ¶ 8.

11

The Plaintiff acted as a settlement agent with respect to the Real Estate Transaction. Complaint, ¶ 8. In this role, the Plaintiff accepted a funding check from the Debtor, deposited the Funding Check into its trust fund account, paid the mortgages held by Community One Federal Credit Union and Wells Fargo, paid certain closing costs associated with the Real Estate Transaction, and then paid the balance of the funds to the Rubins. Complaint, ¶¶ 9 and 11. Furthermore, the Plaintiff has not alleged that it signed any documents as a contracting party or has any contractual obligations with the Buyer or Seller other than to facilitate the settlement of the Property. Wells Fargo Reply Brief at 2 [Docket No. 21]. The Plaintiff was not a party to the Real Estate Transaction; therefore, the Plaintiff does not have standing to bring a claim for either mutual mistake or negligent misrepresentation.

Also, the Court is not persuaded by the Plaintiff's argument that equity must allow the Plaintiff to rescind the Real Estate Transaction. Plaintiff's Responsive Brief at 4 [Docket No. 19]. While the Plaintiff is the only party associated with the Real Estate Transaction who has lost anything, the Plaintiff provides no support for the conclusion that such a position provides the Plaintiff with standing under Nevada law to rescind the Real Estate Transaction. Therefore, the Plaintiff does not have standing to rescind the Real Estate Transaction. Accordingly, the Court grants the Motions to Dismiss to the extent they seek to dismiss Counts III and IV of the Plaintiff's Complaint.

**c. Additional Counts**

In Count II of the Complaint, the Plaintiff requests that this Court establish a constructive trust in favor of the Plaintiff in the amount of any proceeds from the Loan, including the sale of the Loan, and order that the Debtor pay the Plaintiff all funds deposited into the constructive trust.  Complaint, p. 8.  The Plaintiff argues that it effectively funded the Loan and, therefore, any amounts that have been or will be received by the Debtor under the Loan are properly due to the Plaintiff. Complaint, ¶ 28.

In Count V of the Complaint, the Plaintiff requests that this Court reform the Deed of Trust and Promissory Note by substituting the Plaintiff as the beneficiary and payee, respectively.  Complaint, ¶ 43.  The basis for this Count is mutual mistake or the Debtor's negligent misrepresentation or both.  Complaint, ¶ 43.

Wells Fargo and the Reyeses argue that the Court should dismiss Count II and V because none of the allegations put forward in either Count involve Wells Fargo or the Reyeses.[7] Wells Fargo Opening Brief at 5 [Docket No. 18].  The Plaintiff's response is that Wells Fargo and the Reyeses were not named in either Count II or V; therefore, it is unnecessary for the Court to take any action on these Counts with respect to Wells Fargo and Reyeses.  Plaintiff's Responsive Brief at 3 [Docket No. 19]. Therefore, the Court will not take any action on Counts II and V

---

[7] The Reyeses incorporate this argument into their motion to dismiss by joinder.  Reyeses Opening Brief at 10 [Docket No. 23].

with respect to Wells Fargo and the Reyeses and the Motions to Dismiss are denied to the extent they seek to dismiss Counts II and V.

## CONCLUSION

For the reasons set forth above, (i) the Motions to Dismiss are denied to the extent they seek to dismiss Counts I, II and V of the Plaintiff's Complaint and (ii) the Motions to Dismiss are granted to the extent they seek to dismiss Counts III and IV of the Plaintiff's Complaint.  An appropriate Order follows.

BY THE COURT

The Honorable Brendan Linehan Shannon
United States Bankruptcy Judge

Dated: April 2, 2008